# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

MARCUS RUSHING,

          Plaintiff

          -vs-

WOOD HEALTH COMPANY, LLC

And

MCGAW MEDICAL CENTER OF
NORTHWESTERN UNIVERSITY

          Defendant(s)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. **3:24 CV 845**

JUDGE **JUDGE HELMICK**
**MAG JUDGE CLAY**

COMPLAINT: Bench Trial

## COMPLAINT FOR A CIVIL CASE

### I. PARTIES TO THIS COMPLAINT

**A. The Plaintiff**

1. The Plaintiff lives in Lucas County, Ohio and receives mail at the following address: 1144 S Detroit Ave, #141184, Toledo, OH 43614.

2. The Plaintiff is federally classified as an African American/Black.

3. The Plaintiff was employed as a Medical Director for the Defendant, Wood Health Company, LLC.

4. The Plaintiff was employed as a Physician for the Defendant, McGaw Medical Center of Northwestern University.

**B. The Defendant(s)**

5. Defendant No. 1, Wood Health Company, LLC, is a corporation with the address of 950 W Wooster St, Bowling Green, OH, 43402.

6. Defendant No. 2, the McGaw Medical Center of Northwestern University, is a corporation with the address of 420 E. Superior St, STE 9-900, Chicago, IL, 60611.

## II. BASIS FOR FEDERAL JURISDICTION

7. The Plaintiff believes that the following complaint has federal jurisdiction for the following reasons:
(A) The Plaintiff believes that a Federal Question Jurisdiction is applicable because both Defendants engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 when they retaliated against the Plaintiff when he engaged in federally protected activity (42 U.S.C. § 1983 – Civil Rights; 42 U.S.C. § 2000e-2(m) –Title VII)
(B) The Plaintiff believes that a federal jurisdiction is appropriate because the Defendants are headquartered in two different states, namely Illinois and Ohio.
(C) The Plaintiff believes that some of the retaliatory actions committed by both Defendants are subject to federal law. Specifically, the Defendants engaged in the following adverse actions:

> (i) Mail Fraud, which is a federal violation of 940.18 U.S.C. Section 1341. This activity was reported to the BGSU Police Department (Case # 2023-05-0032) which initiated a U.S. Postal Inspector Complaint (Case #51431672)
> (ii) Obstructing Plaintiff's right to justice by intentionally interfering with a Civil Tribunal where the Plaintiff was a respondent (SEE EXHIBITS). This activity was reported to the US Department of Justice (Complaint # 390046-LRF).
> (iii) Obstructing Plaintiff's right to access justice by intimidating or incentivizing Plaintiff's counsel.
> (iv) The aforementioned actions in paragraphs (i) – (iii) above significantly impacted the Plaintiff's Constitutional rights to due process and a fair trial.

## III. FACTS COMMON TO ALL PLEAS

8. The Plaintiff was constructively discharged from the McGaw Medical Center of Northwestern University for severe race-based harassment and retaliation for opposing discrimination **[EXHIBIT A]**.

9. While employed at the McGaw Medical Center of Northwestern University, the Plaintiff received several threats in his performance evaluations that explicitly referenced his race **[EXHIBIT A]**. One of the threats read:

> **"I know that a big part of your character is seeking truth, and it may feel disingenuous to endorse anything that you disagree with. But it will bite you in the ass if you don't learn to concede sometimes to the group, even if they are wrong. You can be completely right, and it won't matter if people have already turned against you. It is a dangerous world for a Black man, and you can't afford to make it more dangerous for yourself by being unable to let things go"**.

> (A) The aforementioned threat explicitly references the Plaintiff's race, color and sex/gender.

10. The Plaintiff entered into an employment agreement with Wood Health Company, LLC on or around Oct 9 of 2022.

11. On Jan 10 of 2023, the Plaintiff opposed discrimination by engaging in federally protected activity against the McGaw Medical Center of Northwestern University for continued retaliatory activity even after the Plaintiff was no longer an employee (EEOC Complaint # 440-2023-02757) **[EXHIBIT B]**.

12. On or around Feb 6 of 2023, the McGaw Medical Center of Northwestern University filed into and interfered with a civil tribunal where the presiding judge was an alumnus of Northwestern University and where the Plaintiff in this complaint was a respondent. [**EXHIBIT C**].
(a) During this tribunal the McGaw Medical Center of Northwestern University had directly reached out to an attorney that had formerly represented the Plaintiff.
(b) During this tribunal the McGaw Medical Center of Northwestern University had directly reached out to the opposing counsel.
(c) During this tribunal the McGaw Medical Center of Northwestern University attempted to evade and fabricate a court-ordered subpoena response.
(d) Because of various procedural and adjudicative indiscretions in the aforementioned tribunal, which included procedural fraud and ex parte communication, the Plaintiff had reason to believe that the McGaw Medical Center of Northwestern University had direct communication with the judge presiding over the case, who was an alumnus of Northwestern University.

> The aforementioned was reported to the Judicial Inquiry Board of the Illinois Supreme Court, the Cook County Office of Inspector General, as well as the Office of the Chief Justice.

13. Because of the aforementioned, on or around Feb 8 of 2023, the Plaintiff asked the presiding judge to recuse himself from the tribunal [**EXHIBIT C**].

14. However, on Feb 8 of 2023, the presiding judge ignored the request to recuse himself and instead granted the McGaw Medical Center of Northwestern University an Order of Protection.

> [A] On or around Feb 22 of 2023, The Plaintiff would later file a Motion to Change Venue and to Substitute Judge, but these Motions would be ignored by the presiding Judge.
> [B] Because of the aforementioned, the Plaintiff reported his concerns to the Judicial Inquiry Board of the Illinois Supreme Court.

15. On the same day that the McGaw Medical Center of Northwestern University received the Order of Protection from the presiding judge, they further harassed and intimidated the Plaintiff by demanding that he sign a waiver exonerating them [**EXHIBITS C & D**]. Specifically, the waiver read:

> "I hereby release and forever discharge McGaw including its corporate members, directors, officers, employees, agents, faculty, representatives, affiliates, partners, program directors, assistant program directors from any and all liability whatsoever relating to the release of the information and documents described above including, but not limited to, contract claims, court claims, defamation claims, discrimination claims (including, but not limited to, claims based on age, sex, national origin, sexual orientation, religion, race, ancestry, color, disability, harassment, retaliation, and other legally protected category or characteristic) and/or any other claims whatsoever. This release includes a waiver of all unknown claims. I, Marcus Dewayne Rushing, hereby voluntarily enter into this authorization and release, with full knowledge of its legal significance, this ___ day of ___, 20___Signature."

16. In or around March 2 of 2023, the McGaw Medical Center of Northwestern sent the same waiver with exoneration language to the Credentialing Corporation of America, LLC, a company that Wood Health Company, LLC hired for third-party credentialing [**EXHIBIT D**].

17. Around the same time, the McGaw Medical Center of Northwestern University then reached out to Wood Health Company, LLC, where the Plaintiff was already employed as Medical Director,

demanding that the Plaintiff sign a waiver exonerating the McGaw Medical Center of Northwestern University [**EXHIBIT D**].

18. The Plaintiff explained that he was unable to sign the waiver because at that point in time he felt that it would compromise his ongoing EEOC complaint against the McGaw Medical Center of Northwestern University [**EXHIBIT E**].

19. The CEO of Wood Health Company, LLC acknowledged that the waiver request was odd and likely had something to do with the ongoing EEOC complaint. Specifically, the CEO wrote on April 7 of 2023 the following [**EXHIBIT D**]:

> "Dr. Rushing…McGaw has not responded to our normal request even with your signed release on our standard credentialing form. They returned an authorization and release of their own instead…This is a bit different from our usual experience…which is probably tied to the EEOC matter that you shared…"

20. Though Wood Health Company, Inc, acknowledged that the waiver was not typical and was likely associated with the EEOC matter, executive leaders of Wood Health Company, Inc on four occasions between March and April of 2023 pressured the Plaintiff to sign the waiver exonerating the McGaw Medical Center of Northwestern University [**EXHIBIT E**].

21. When the Plaintiff refused to sign the waiver on four separate occasions then Wood Health Company, Inc began to engage in the following unlawful employment conduct [**EXHIBIT E**].
(A) Wood Health Company, Inc demoted the Plaintiff from his position as Medical Director
(B) Wood Health Company, Inc created a hostile work environment for the Plaintiff
(C) Wood Health Company, Inc began to harass the Plaintiff by hyper-scrutinizing his work activities as well as requesting that his subsidiaries supervise his work activities.
(D) Wood Health Company, Inc, began to hyper-scrutinize the Plaintiff's activities to find an occasion for disciplinary action against.

22. On April 24 of 2023 the Plaintiff's father passed away and shortly thereafter he took leave to grieve and bury his father.

23. Just before his leave and during his leave, Wood Health Company, Inc informs the Plaintiff that they have been in contact with the opposing counsel in the civil tribunal where the Plaintiff was a respondent [**EXHBIT E**].

24. On or around May 5 of 2023, the Plaintiff noticed that his online employee profile was changed without prior notification or consent of the Plaintiff. Specifically, it listed the address and exact physical location for the Plaintiff, when no other provider had the exact physical location listed [**EXHBIT E**].

25. Around the same time, the Plaintiff reached out to Wood Health Company, Inc to inquire about this change and to request removal of the profile [**EXHBIT E**].

26. Shortly after Wood Health Company, Inc posted the online profile, they began to receive personal none-business mail on behalf of the Plaintiff [**EXHIBIT E**].

27. Specifically, when the Plaintiff returned from burying his father, opened mail that appeared to

contain court documents pertinent to the aforementioned civil tribunal, was conspicuously displayed on his office desk [**EXHBITS E & F**].

(A) At no point in time had the Plaintiff given Wood Health Company, Inc permission to receive personal mail on his behalf.

(B) The Plaintiff had a valid service mailing address on file with the court that was handling the aforementioned civil tribunal and the opposing counsel.

(C) At no point in time had the Plaintiff ever provided the court or opposing counsel with a service address for Wood Health Company, Inc.

(D) Because of the aforementioned in sub-paragraphs A-C above, the Plaintiff suspected fraud.

28. When the Plaintiff inquired about the aforementioned incident, he was informed that an executive from Wood Health Company, Inc had requested that the Plaintiff's mail be given to Wood Health Company, Inc, instead of the Plaintiff [**EXHBITS E & F**].

29. The Plaintiff filed a police report (BGSU Case # 2023-05-0032) and the BGSU police department then communicated the concern to the US Postal Inspector (Case #51431672) because the concern had federal elements of mail fraud, including mail tampering [**EXHBIT F**].

30. During a meeting with the Human Resources department for Wood Health Company, Inc, the Plaintiff was informed that Wood Health Company, Inc had been in contact with an attorney who was representing the McGaw Medical Center of Northwestern University as well as a judge who was an alumnus of Northwestern University who was presiding over the aforementioned civil tribunal [**EXHIBIT E**].

31. Because of the aforementioned, the Plaintiff then filed a complaint against Wood Health Company (EEOC # 471-2023-03917; Ohio Civil Rights Commission # 22A-2023-03783C).

32. Wood Health Company, Inc continued to solicit, and withhold and tamper with the Plaintiff's personal mail and each occurrence was reported to the BGSU police department [**EXHBIT F**].

33. After the Plaintiff made his final police report on June 6 of 2023, the following day on June 7 of 2023, he was terminated [**EXHIBIT G**].

34. On or around the same time, the Plaintiff became aware that Wood Health Company had started to receive mailed correspondence concerning the Plaintiff and a former employer, Unity Point Health.

(A) Of note, while employed at UnityPoint Health, the McGaw Medical Center of Northwestern University had hosted a false physician profile regarding the Plaintiff that appeared to serve as a vehicle for soliciting patient complaints regarding the Plaintiff.

(B) Shortly after this correspondence with Wood Health Company, Inc, UnityPoint Health would then file a complaint against the Plaintiff with the Iowa Board of Medicine. The Iowa Board of Medicine would later determine that the complaint was frivolous.

(C) The aforementioned described in sub-paragraphs A – C above was also reported to the EEOC (EEOC No. 443-2023-03442)

35. Wood Health Company, Inc alleged that the termination was due to the Plaintiff not completing an employment application.

36. The Plaintiff would later discover that the judge presiding over the civil tribunal would grant a default judgement against the Plaintiff valued at approximately $3,000,000.00, which included loss of property.

## IV. STATEMENT OF CLAIM

37. The Plaintiff alleges that the McGaw Medical Center of Northwestern University in concert with Wood Health Company, Inc engaged in retaliation, as defined by the US Equal Employment Opportunity Commission, against the Plaintiff because of his race and because the Plaintiff had engaged in federally protected activity, as defined by the US Equal Employment Opportunity Commission.

38. The Plaintiff further alleges that both the McGaw Medical Center of Northwestern University and Wood Health Company, Inc engaged in unlawful employment activity in violation of Title VII of the Civil Rights Act of 1964 when the following occurred:
(A) the McGaw Medical Center of Northwestern University, as both employer and training program, subjected the Plaintiff to discrepant terms and conditions of employment and training due to his race, which ultimately resulted in a Constructive Discharge/Termination
(B) the McGaw Medical Center of Northwestern University deprived the Plaintiff of the privilege to continue employment and training because of his race and because he engaged in federally protected activity.
(C) the McGaw Medical Center of Northwestern University limited and deprived the Plaintiff of employment and training opportunities because of his race.
(i) Of note, a threat placed in the performance evaluation of the Defendant made explicit reference to the Plaintiff's color and gender (SEE paragraph 7 above)
(D) the McGaw Medical Center of Northwestern University classified the Plaintiff during his employment in a way that deprived or tended to deprive the Plaintiff of employment opportunities because of his race.
(E) Wood Health Company, Inc subjected the Plaintiff to discrepant terms and conditions of employment due to his race and because the Plaintiff opposed discrimination by engaging in federally protected activity.
(F) Wood Health Company, Inc deprived the Plaintiff of the privilege of employment when they wrongfully terminated the Plaintiff's employment agreement due to his race and because the Plaintiff opposed discrimination by engaging in federally protected activity.

39. The Plaintiff alleges that Wood Health Company, Inc engaged in Mail Fraud, in violation of 940.18 U.S.C. Section 1341, when Wood Health Company, Inc, and its actual and apparent agents solicited, withheld, and tampered with the Plaintiff's personal mail.

40. The Plaintiff alleges that both Wood Health Company, Inc and the McGaw Medical Center of Northwestern University interfered with the Plaintiff's Constitutional Rights to Due Process and a Fair Trial when:
(A) the McGaw Medical Center of Northwestern University reached out to the Plaintiff's counsel to interfere with an ongoing tribunal.
(B) the McGaw Medical Center of Northwestern University attempted to influence a Judge who was an alumnus of Northwestern University who was presiding over the tribunal where the Plaintiff was a respondent.
(C) the McGaw Medical Center of Northwestern University reached out to the opposing counsel in a civil tribunal where the Plaintiff was a respondent.

(D) the McGaw Medical Center of Northwestern University attempted to evade and fabricate a court ordered subpoena response in a civil tribunal where the Plaintiff was a respondent.
(E) Wood Health Company, Inc and its actual and apparent agents had contact with both a presiding Judge and an attorney who was representing the McGaw Medical Center of Northwestern University.
(F) Wood Health Company, Inc and its actual and apparent agents had contact with the opposing counsel in a civil tribunal where the Plaintiff was a respondent.
(G) Wood Health Company, Inc solicited, withheld and tampered with the Plaintiff's personal mail which ultimately resulted in a Default Judgement against the Plaintiff in a civil tribunal where the Plaintiff was the respondent.

## V. RELIEF

41. Collectively, the adverse actions described in paragraphs 8 – 40 above have caused the following harms to the Plaintiff [**EXHIBIT B & E**]:
  (A) Severe personal and professional reputational harm;
  (B) Significant loss of income and earning potential;
  (C) Significant emotional and financial distress;
  (D) Loss of real property;
  (E) A loss of personal and professional consortium;
  (F) Obstruction of Access to Justice and Infringement on Plaintiff's Rights to Due process and a Fair Trial; and
  (G) Significant alterations in career trajectory.
     (i) Because of the hostile work environment and concomitant constructive discharge from the McGaw Medical Center of Northwestern University, the Plaintiff was prevented from completing his training in Family Medicine in a manner that would not have caused significant delay.
     (ii) Because of the McGaw Medical Center of Northwestern University's interference with transfer to alternate employment after the constructive discharge, the Plaintiff was prevented from completing training and subsequent Board Eligibility for Family Medicine altogether. The aforementioned caused the Plaintiff to pursue an alternate medical specialty, Occupational Medicine, in another state, away from his family.
     (iii) Upon completing training and becoming Board Certified in Occupational Medicine, and upon obtaining a Medical Directorship, the McGaw Medical Center of Northwestern University yet again reached out to interfere with this business relationship.
     (iv) The actions of the Defendants have given the Plaintiff two gaps in employment, which have significantly impacted employment prospects and earning potential.
     (v) Collectively, the severity & pervasiveness of continued harassment and interference coupled with severe personal and professional defamation at the hands of the Defendants have caused the Plaintiff to pursue career opportunities outside of the field of medicine altogether.

**WHEREFORE,** the Plaintiff, Marcus Rushing, represented pro se, respectfully demands JUDGEMENT against all Defendants jointly, and severally, and respectfully requests the following relief:

EQUITABLE RELIEF:

A. Equitable tolling of the Right to Sue against the McGaw Medical Center of Northwestern University that was issued in June of 2023 due to extenuating circumstances (See attached Supplemental Affidavit/**EXHIBIT H**)

B. Consolidation of the complaint against the McGaw Medical Center of Northwestern University (EEOC # 440-2023-02757) and Wood Health Company, Inc (EEOC # 471-2023-03917), as it relates to the causes of actions herein.

C. An Injunctive Order that prevents either Defendant from tracking Plaintiff's place of employment or place of residence.

D. An Injunctive Order that prevents either Defendant from communicating with any actual or prospective employer unless otherwise required by a Court of Law.

E. An Injunctive Order that prevents either Defendant from interfering with any actual or prospective business relationship involving the Plaintiff.

F. An Order requiring both Defendants to submit a statement renouncing any defamatory allegations about the Plaintiff. The renunciation statement will be delivered to any third-party that either Defendant communicated defamatory material.

## COMPENSATORY DAMAGES:

G. Damages in the amount of $12,572,000.00 in lost earnings from a wrongful termination from Wood County Hospital, Inc. The annual salary and incentive in the employment contract at Wood County Hospital was valued at $349,000.00 per year. The estimated annual value of health and retirement benefits of the employment agreement are valued at $100,000.00 per year. Thus, the total annual value of the contract is $449,000.00 and is multiplied over the anticipated work period (28 years) with Wood County Hospital, Inc. Due to academic debt, advanced age per profession as a result of having to delay and repeat training as a result of discriminatory activity, significant harm to professional reputation as a result of discriminatory activity, and gaps in employment imposed by discriminatory activity, the Plaintiff will be unable to recover his prior earning potential according to his previous career trajectory with Wood County Hospital, Inc. The Plaintiff is currently pursuing opportunities outside of medicine altogether where he can earn a living in peace beyond the reach and confines of either Defendant.

H. Damages in the amount of $11,532,000.00 in lost earnings from the sequalae of a constructive discharge and interference with employment opportunities. At the time the Plaintiff was constructively discharged from the McGaw Medical Center of Northwestern University, he had a signed contract with an employer to be initiated upon completion of the Family Medicine program at Northwestern University, with an annual salary of $272,000.00. Health and retirement benefits associated with this agreement were valued at $100,000.00 per year. A total annual benefit valued at $372,000.00 per year is multiplied over the anticipated trajectory (31 years) with the employer. The Plaintiff was prevented from enacting this agreement when he was constructively discharged and when the Defendant interfered with several lateral transfers to alternate employment that would have allowed the Plaintiff to honor his post-graduation employment agreement [**EXHIBIT B**]. When the Plaintiff was able to secure alternate training and employment in Family Medicine, the McGaw Medical Center of Northwestern University interfered with this opportunity as well by refusing to transfer an institutional trainee license and communicating defamatory allegations to the medical

licensing board. This forced the Plaintiff to switch fields entirely and restart medical training anew in another state.

PUNITIVE DAMAGES:

I. Damages in the amount of $20,000,000.00 for interfering with a civil tribunal which compromised the Plaintiff's right to due process and a fair trial. It is rare for an employer to file into and interfere with a civil tribunal involving one of its employees. The audacity of this adverse action reflects the wanton disregard that the Defendants have for the laws of this great country. As both Defendants have a decorated history of unlawful employment practices against federally protected populations, the Plaintiff is requesting this relief to prevent further actions against vulnerable populations.

J. Damages in the amount of $50,000,000.00 for emotional distress because of the aforementioned. The Plaintiff suffered a stress induced cardiac event due to the adverse actions of the Defendants. There has been significant emotional harm to the Plaintiff and the Plaintiff's family as a result of the adverse reactions.

K. Providing any other relief as this Honorable Court deems just and equitable.

## VI. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:

5/10/24

Respectfully Submitted,

Marcus Rushing, Plaintiff
1144 S Detroit Ave, #141184
Toledo, Ohio 43614
515 - 650 - 2464