UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Marcus Rushing,                                         Case No. 3:24-cv-845

        Plaintiff,

    v.                                                 MEMORANDUM OPINION
                                                           AND ORDER

Wood Health Company, LLC, *et al.*,

        Defendants.

## I.     Introduction

Defendants Wood Health Company, LLC, and McGaw Medical Center of Northwestern University move to dismiss the claims asserted against them by Plaintiff Marcus Rushing, who is proceeding without the assistance of counsel. (Doc. Nos. 22 and 29). Rushing filed a combined brief in opposition to the motions. (Doc. No. 27). Both Defendants filed reply briefs in support of their motions. (Doc. Nos. 28 and 30). Rushing then moved to strike McGaw's reply brief, (Doc. No. 29), which McGaw opposed. (Doc. No. 31). For the reasons stated below, I deny Rushing's motion to strike and grant the motions to dismiss.

## II.     Background

Rushing "is federally classified as an African American/Black" male. (Doc. No. 1 at 1). He was employed as a resident physician at the McGaw Medical Center in Chicago, Illinois from July 2016 until February 2018, when, he alleges, he was constructively discharged "for severe race-based harassment and retaliation for opposing discrimination." (Doc. No. 1-3 at 1). While Rushing asserts he "reported his concerns to the Illinois Department of Human Rights" following his alleged

constructive discharge, it is unclear whether he filed a formal charge of discrimination. (Doc. No. 1-3 at 1-2). Rushing ultimately entered into a settlement agreement with McGaw concerning his employment and post-employment complaints about his treatment by McGaw. (*Id.* at 2).

Over four years later, in October 2022, Rushing entered into an employment agreement with Wood Health (the "Employment Agreement"). (Doc. No. 9-1 at 26-40). The Employment Agreement called for Rushing to commence his employment on March 1, 2023, "or the date upon which [Rushing] has successfully completed Employer's employment application process . . . and has been granted medical staff privileges" at the Wood County Hospital in Bowling Green, Ohio.[1] (*Id.* at 26). The Employment Agreement also required Rushing to "[o]btain and maintain membership on the medical staff of [the Wood County] Hospital in the active or associate staff category," and to follow Wood Health's "policies, bylaws, rules and regulations." (*Id.* at 30). The Employment Agreement would automatically terminate if Rushing did not complete the application process and obtain medical staff privileges at the Wood County Hospital by April 1, 2023. (*Id.* at 26). As a part of the application process, Rushing was required to demonstrate he had sufficient credentials to gain medical staff privileges. (Doc. No. 1 at 3-4).

Rushing filed a charge of discrimination against McGaw with the Equal Employment Opportunity Commission on January 10, 2023, alleging McGaw "continued" to engage in retaliatory actions against him.[2] (Doc. No. 1 at 2); (*see also* Doc. No. 1-3 at 2). Rushing filed this charge after an unnamed person from McGaw allegedly contacted the domestic relations judge presiding over a

---

[1] I conclude I may consider this exhibit to Wood Health's motion to dismiss because Rushing refers to this agreement in his complaint and attached an abbreviated version of it to his complaint. (*See* Doc. No. 1-6). *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

[2] McGaw asserts Rushing did not file his EEOC charge until May 31, 2023. (Doc. No. 22 at 9-10). But the paragraphs of the complaint to which McGaw cites do not include reference to that date. Further, McGaw has not filed a copy of the charge to show Rushing's allegation as to the date he filed his EEOC charge is untrue.

matter involving Rushing with the intent of causing the judge to become biased against Rushing.³, ⁴ (Doc. No. 1-3 at 2).

Rushing alleged that McGaw: (1) contacted his attorney "with the intent to interfere with and bias the tribunal against [him]"; (2) contacted opposing counsel with the same intent; (3) "threaten[ed] to communicate a fabricated subpoena response to the Honorable Court"; (4) contacted the presiding judge, an alumnus of Northwestern University; (5) failed to respond to two court orders; (6) "directly fil[ed] into the tribunal to intimidate and harass [him]"; and (7) "solicit[ed] privileged information pertinent to [his] health, personal finances, personal relationships[,] and intimate details regarding two federal investigations that implicated the McGaw Medical Center of Northwestern University." (*Id.*). Rushing also claimed McGaw "hosted an unauthorized physician profile to solicit patient complaints about" him. (*Id.*). Rushing filed a charge of discrimination with the EEOC because of McGaw's alleged conduct. (*Id.*).

Around this time, Rushing alleges McGaw contacted him and "demand[ed]" he sign a waiver "exonerating" McGaw. (Doc. No. 1 at 3). On March 2, 2023, McGaw faxed a document titled "Authorization and Release of Information" to Credentialing Corporation of America, LLC, ("CCA") a third-party credentialing service used by Wood Health to verify his credentials in order to

---

³ Rushing alleges in his complaint in this case that he first filed his charge of discrimination on January 10, 2023, because McGaw engaged in "continued retaliatory activity even after the Plaintiff was no longer an employee." (Doc. No. 1 at 2). He then alleges that, on February 6, 2023, McGaw contacted the domestic relations judge and interfered in his case. (*Id.* at 3). But this alleged timeline is directly contradicted by facts alleged in a lawsuit Rushing filed against McGaw in the Circuit Court of Cook County, Illinois on April 24, 2024, 16 days before Rushing filed this lawsuit. (Doc. No. 1-3 at 2). The Sixth Circuit has said that "if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document." *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (further citation omitted). Therefore, I will accept as true the facts alleged in Rushing's April 24, 2024 complaint.

⁴ Rushing asserts McGaw was subpoenaed in his domestic relations case, (Doc. No. 27 at 5), and he alleges McGaw "fail[ed] to respond to two court-orders." (Doc. No. 1-3 at 2).

3

determine whether Rushing qualified for medical staff privileges at the Wood County Hospital. (Doc. No. 1-5 at 1-2); (*see also* Doc. No. 1 at 3).

In the fax cover letter, Nancy Parlapiano, the Executive Director of Graduate Medical Education at McGaw, indicated McGaw received CCA's request for verification of Rushing's training with McGaw and stated "[a]s is our standard practice, before we may proceed[,] Dr. Rushing must sign the attached release." (Doc. No. 1-5 at 1). Rushing also alleges McGaw contacted Wood Health itself to "demand[ ]" that Rushing sign the waiver. (Doc. No. 1 at 3-4). Rushing asserts he refused to sign the waiver because he believed it could compromise his ability to pursue his EEOC charge against McGaw. (*Id.* at 4). According to Rushing, Wood Health acknowledged the McGaw waiver was unusual but nonetheless "pressured" Rushing to sign the waiver on four separate occasions. (*Id.*).

On April 6, 2023, Stan Korducki, Wood Health's CEO, responded to an email from Rushing. Korducki wrote:

> Dr. Rushing,
>
> Thanks for the follow up email. Please know that I hear your concerns and respect them. As I shared with you during our call, I am not specifically aware at this moment what responses have been received from the various institutions except for McGaw Northwestern. McGaw has not responded to our normal request even with your signed release on our standard credentialing form. They returned an authorization and release of their own instead. Thanks for expressing your concerns about that document.
>
> This is a bit different from our usual experience in the credentialing process which is probably tied to the EEOC matter that you shared. As I mentioned, we'll reach out to our counsel to identify an approach to obtain the information we normally ask of each institution that a physician has worked at or trained. So[,] I will get back to you on this.
>
> Please also keep in mind that we are working together here. Let's keep talking.

(Doc. No. 1-5 at 4).

Rushing alleges that, after he refused to sign the waiver, Wood Health allegedly demoted him, created a hostile work environment for him, and harassed him by "hyper-scrutinizing his work"

4

and his other activities. (Doc. No. 1 at 4). Wood Health also allegedly posted Rushing's "address and exact physical location, . . . when no other provider had the exact physical location listed." (*Id.*).

Rushing also claims that Wood Health began opening his personal mail. (Doc. No. 1 at 4-5). Rushing then filed a police report, asserting mail fraud. (*Id.* at 5). Rushing alleges Wood Health continued opening his mail and that he continued filing police reports. (*Id.*). He asserts Wood Health terminated his employment on June 7, 2023, one day after he made his final police report regarding the mail issue.[5] (*Id.*).

At some point during this period, Rushing learned that Wood Health had been in contact with an attorney representing McGaw as well as the judge in Rushing's domestic relations case.[6] (*Id.* at 5). He alleges he filed a charge against Wood Health with the Ohio Civil Rights Commission as a result. (*Id.*). Rushing did not indicate when he filed the charge, and the charge is not listed on a timeline Rushing included in his brief in opposition to the motions to dismiss. (*See* Doc. No. 27 at 13). The last date in that timeline is the date of Rushing's termination, June 7, 2023. (*Id.*).

Rushing alleges Wood Health "engaged in unlawful employment activity in violation of Title VII of the Civil Rights Act of 1964 when . . .:

. . .

---

[5] It is not clear from the Complaint or the related filings why Rushing's Employment Agreement did not automatically terminate on April 1, 2023, because Rushing had not completed the application process by that required date. But it appears Rushing and Wood Health agreed to extend the deadline, either formally or informally, because Wood Health continued to pursue "primary source verification from all educational sites" identified in Rushing's application. (Doc. No. 1-8 at 1).

[6] Rushing alleges the domestic relations judge entered a default judgment against him and awarded damages of approximately $3 million. (Doc. No. 1 at 6). In a civil lawsuit Rushing filed in an Illinois state court against McGaw, Rushing alleged the default judgment damages was "in excess of $1.5 Million dollars." (Doc. No. 1-3 at 3).

>   (E) Wood Health Company, Inc subjected the Plaintiff to discrepant terms and conditions of employment due to his race and because the Plaintiff opposed discrimination by engaging in federally protected activity.
>
>   (F) Wood Health Company, Inc deprived the Plaintiff of the privilege of employment when they wrongfully terminated the Plaintiffs employment agreement due to his race and because the Plaintiff opposed discrimination by engaging in federally protected activity.

(*Id.* at 6).

### III. STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action."). A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to

6

relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir. 2008). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

While pleadings submitted by *pro se* plaintiffs are "held to a less stringent pleading standard" than pleadings filed by an attorney, a *pro se* plaintiff still must plead sufficient "surrounding facts" to support a legal conclusion pled in the complaint. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### IV. ANALYSIS

Rushing asserts four claims: (1) discrimination in violation of Title VII of the Civil Rights Act of 1964 against both Defendants; (2) retaliation in violation of Title VII against both Defendants; (3) mail fraud, 18 U.S.C. § 1341, against Wood Health; and (4) a claim pursuant to 42 U.S.C. § 1983 against both Defendants for allegedly interfering with his constitutional rights to due process and a fair trial. (*Id.* at 6). Rushing seeks approximately $24 million in compensatory damages and $70 million in punitive damages. (*Id.* at 8-9).

### A. TITLE VII

Rushing asserts two Title VII claims, one for discrimination and a second for retaliation. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from

7

retaliating against an employee who has engaged in activity protected by Title VII. *See, e.g., Hamade v. Valiant Gov't Serv., LLC*, 807 F. App'x 546, 549 (6th Cir. 2020).

"[A]t the motion-to-dismiss stage, a plaintiff is not required to plead facts establishing a prima facie case as is required under *McDonnell Douglas*." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024)) (further citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)). A court considering a defendant's Rule 12(b)(6) motion to dismiss a plaintiff's discrimination and retaliation claims only considers whether the plaintiff has plausibly alleged a violation of Title VII. *Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2012). *See also Flynn v. Memphis Pathology Lab. (AEL)*, No. 2:19-2882-CV-SHL-TMP, 2020 WL 5801087, at *4 (W.D. Tenn. Sept. 29, 2020) ("It is axiomatic that, to state a claim of race discrimination under Title VII, the plaintiff must plead facts which allow the court to infer that the employer's wrongful termination related to the plaintiff's race.") (citations omitted).

Rushing fails to state a plausible claim for relief under Title VII against Wood Health. Title VII prohibits an employer from taking an adverse employment action against an employee "because of" the employee's race. 42 U.S.C. § 2000e-2(a). Rushing asserts Wood Health "subjected [him] . . . to discrepant terms and conditions of employment due to his race and because [he] . . . opposed discrimination by engaging in federally protected activity." (Doc. No. 1 at 6). He also alleges Wood Health terminated his employment for the same reasons.

But these allegations are only conclusions; Rushing does not allege any facts which show Wood Health took any action because of Rushing's race. Instead, Rushing alleges Wood Health took adverse employment actions against him only after he "refused to sign the [McGaw] waiver on four separate occasions." (Doc. No. 1 at 4). But the McGaw waiver says nothing about Rushing's race and Rushing has not alleged any facts to connect Wood Health's requirement that he sign the waiver to his race.

8

As I noted above, Rushing alleges he refused to sign the waiver "because at that point in time he felt that it would compromise his ongoing EEOC complaint" against McGaw. (Doc. No. 1 at 4). Rushing alleges "[s]pecifically, the waiver read:

> "I hereby release and forever discharge McGaw including its corporate members, directors, officers, employees, agents, faculty, representatives, affiliates, partners, program directors, assistant program directors from any and all liability whatsoever relating to the release of the information and documents described above including, but not limited to, contract claims, court claims, defamation claims, discrimination claims (including, but not limited to, claims based on age, sex, national origin, sexual orientation, religion, race, ancestry, color, disability, harassment, retaliation, and other legally protected category or characteristic) and/or any other claims whatsoever. This release includes a waiver of all unknown claims. I, Marcus Dewayne Rushing, hereby voluntarily enter into this authorization and release, with full knowledge of its legal significance, this __ day of __, 20 __Signature."

(*Id.* at 3) (citing Doc. Nos. 1-4 and 1-5).

But Rushing leaves out a foundational part of the McGaw waiver. That document reads, in full:

> I, Marcus Dewayne Rushing, MD, hereby authorize The McGaw Medical Center of Northwestern University ("McGaw") to release information and documents relating to my participation as a post-graduate medical resident in McGaw's Family Medicine Post-Graduate Medical Education Program (the "Program") to Credentialing Corporation of America, Inc. (the "Requestor"). Information and documents as used herein includes any information or documents asked for by the Requestor relating to my participation, completion[,] or failure to complete the Program and/or my performance in the Program including any disciplinary actions.
>
> I hereby release and forever discharge McGaw including its corporate members, directors, officers, employees, agents, faculty, representatives, affiliates, partners, program directors, assistant program directors from any and all liability whatsoever relating to the release of the information and documents described above including, but not limited to, contract claims, court claims, defamation claims, discrimination claims (including, but not limited to, claims based on age, sex, national origin, sexual orientation, religion, race, ancestry, color, disability, harassment, retaliation, and other legally protected category or characteristic) and/or any other claims whatsoever. This release includes a waiver of all unknown claims.
>
> I, Marcus Dewayne Rushing, hereby voluntarily enter into this authorization and release, with full knowledge of its legal significance, this __ day of __, 20__.
>
> _____
> Signature

9

(Doc. No. 1-5 at 2). When read in its appropriate context, it is clear the McGaw waiver concerns only claims which might arise out of McGaw's disclosure of Rushing's records from the period of his participation in the Program. By its plain terms, the McGaw waiver would not require Rushing to forfeit his January 2023 EEOC charge or any claim arising out of that charge. Therefore, the McGaw waiver does not support Rushing's claim that Wood Health discriminated against him because of his race.

Rushing alleges that Wood Health treated him differently and ultimately terminated his employment "due to his race." (Doc. No. 1 at 6). But, while Rule 12(b)(6) does not require a plaintiff to plead detailed factual allegations, a plaintiff cannot state a plausible claim for relief by merely offering "'a legal conclusion couched as a factual allegation.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)) (further citations omitted). Rushing's complaint simply does not contain any factual allegations which would support a reasonable inference that Wood Health's actions were connected to Rushing's race.

While Rushing argues in his opposition brief that "similarly situated physicians of a different race were not treated in the same manner" as he was, (Doc. No. 27 at 10), he did not include any such allegations in his complaint. And it is well-settled that a plaintiff cannot amend the complaint in an opposition brief. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483-84 (6th Cir. 2020) (citing cases). *See also Petty v. Bluegrass Cellular, Inc.*, Case No. 3:19-cv-193, 2021 WL 4448937, at *2 (W.D. Ky. Sept. 28, 2021) (rejecting a *pro se* plaintiff's attempt to supplement her amended complaint through her brief in opposition to the defendant's motion to dismiss).

Even if I were to consider Rushing's disparate treatment allegation from his opposition brief, Wood Health still would be entitled to dismissal of Rushing's discrimination claim. Again, this

10

"'legal conclusion couched as a factual allegation'" is not entitled to a presumption of truth. *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rushing's assertion that similarly situated physicians outside of his protected class were treated better than he was is far too conclusory to satisfy his burden to plausibly allege a violation of Title VII. I conclude Wood Health is entitled to the dismissal of Rushing's Title VII discrimination claim because his complaint does not contain sufficient factual allegations to support the necessary inference that Wood Health took any adverse employment actions against Rushing because of his race.

Wood Health also is entitled to the dismissal of Rushing's Title VII retaliation claim. Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII's "opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). At this stage of the proceedings, a plaintiff must allege "'facts to support a causal link between [his] claimed protected activities and [his employer's] [adverse employment actions]." *Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *7 (6th Cir. Jan. 26, 2022) (quoting *Koutsoukos v. Adecco USA, Inc.*, No. 16-2610, 2017 WL 5514558, at *2 (6th Cir. July 14, 2017) (further citing *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999)) (final alteration by *Kinney*).

Liberally construing the complaint, Rushing alleges Wood Health terminated his employment in June 2023 in retaliation for his opposition of an allegedly unlawful employment

11

practice through his filing of an EEOC charge against McGaw in January 2023. (Doc. No. 1 at 2, 6). Wood Health learned of Rushing's EEOC charge as early as March 2023, but no later than April 6, 2023. (*Id.* at 3-4); (Doc. No. 1-5 at 4).

I conclude Rushing's allegations are insufficient to connect his EEOC charge to his termination. Rushing apparently relies only on the temporal proximity of Wood Health's knowledge of his EEOC charge against McGaw and his termination, as the complaint does not contain other allegations suggesting that Wood Health took any action against Rushing because Rushing filed that EEOC charge.[7] But this temporal proximity does not support a reasonable inference that his EEOC filing was the but-for cause of Rushing's termination, because "[t]he law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) (citing *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 363-64 (6th Cir. 2001), and *Nguyen v. City of Cleveland,* 229 F.3d 559, 566 (6th Cir. 2000)).

Moreover, the Sixth Circuit has held "'an intervening legitimate reason' to take an adverse employment action 'dispels an inference of retaliation based on temporal proximity.'" *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 627 (6th Cir. 2013) (quoting *Wasek v. Arrow Energy Servs., Inc.,* 682 F.3d 463, 472 (6th Cir. 2012)). Wood Health has identified an intervening legitimate reason – Rushing's failure to complete the employment application process. Rushing knew no later than October 9, 2022, that he was required to "successfully complete[ Wood Health's] employment application process" and be "granted medical staff privileges in occupational health . . . [as] governed by the bylaws of the medical staff then in effect." (Doc. No. 9-1 at 26). This process included, in

---

[7] Rushing alleges Wood Health took certain adverse actions against him because he "refused to sign the [McGaw] wavier." (Doc. No. 1 at 4). But, as I discuss below, Rushing's refusal to sign the waiver is not protected activity.

12

part, verification of Rushing's professional credentials by reference to his employment and training records. (Doc. No. 1 at 3-4).

Thus, the credentialing requirement predated the filing of Rushing's EEOC charge. After Rushing voiced his concerns with the McGaw waiver, Wood Health sought to identify an alternate approach to obtain Rushing's records from McGaw. (Doc. No. 1-5 at 4). Wood Health's efforts also included extending, whether formally or informally, the "automatic[] termination" date of Rushing's employment agreement by over two months. (Doc. No. 9-1 at 26). Therefore, Rushing's failure to complete the employment application process as required by the terms of his employment contract constitutes a legitimate, nondiscriminatory reason for the termination of his employment.

Nor does Rushing's refusal to sign the McGaw waiver constitute protected activity, as that waiver does not "'involve allegations of discriminatory employment practices.'" *Williams v. Dearborn Motors 1, LLC*, No. 20-1351, 2021 WL 3854805, at *7 (6th Cir. Aug. 30, 2021) (quoting *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 592 n.4 (6th Cir. 2007)). As I noted above, the McGaw waiver expressly released only McGaw from any liability arising from its release to CCA of "information and documents related to [Rushing's] participation as a post-graduate medical resident" in McGaw's post-graduate program. (Doc. No. 1-5 at 2).

Rushing alleges Korducki, Wood Health's CEO, "acknowledged the waiver request was odd and likely had something to do with the ongoing EEOC complaint." (Doc. No. 1 at 4). But even if Korducki shared Rushing's view on the McGaw waiver, it would not change the plain language of that document, which clearly limits the scope of the release of any claim arising out of the communication of information from McGaw to CCA. Nothing in the complaint or the various documents Rushing attached to the complaint supports a reasonable inference that Rushing's refusal to sign the McGaw waiver constitutes protected activity covered by Title VII.

Therefore, I conclude Rushing fails to state a plausible retaliation claim against Wood Health.

I also conclude Rushing fails to state a plausible Title VII claim against McGaw. Rushing's employment with McGaw ended in 2018. An employee who seeks relief under Title VII must first file a charge of discrimination within 180 days after the allegedly unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The employee then must initiate a civil lawsuit within 90 days of the completion of the administrative proceedings. 42 U.S.C. § 2000e-5(f)(1). These requirements are "mandatory," and a claim is subject to dismissal if the plaintiff failed to comply with either requirement. *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 (2019).

McGaw argues Rushing's Title VII discrimination claim against it must be dismissed because it is untimely. (Doc. No. 22 at 11-12). I agree in part. Rushing filed a charge of discrimination against McGaw in 2018, after what he describes as his constructive discharge. (Doc. No. 1-3 at 1). That charge was resolved by a settlement agreement between McGaw and Rushing. (*Id.* at 2). As a result, Rushing did not file a civil lawsuit against McGaw in connection with his 2018 charge of discrimination until he filed this lawsuit in 2024, long after the 90-day deadline expired.

Rushing resists the conclusion that any claim arising from his term of employment with McGaw is time-barred, arguing he is entitled to equitable tolling because "McGaw fraudulently concealed components of [the] settlement agreement." (Doc. No. 27 at 7). But the complaint does not contain any allegations which might support a claim of fraudulent concealment, and Rushing cannot amend his complaint through his opposition brief. *Bates*, 958 F.3d at 483. Moreover, Rushing's brief itself does not contain any factual allegations to support a fraudulent concealment claim. (*See* Doc. No. 27). Any Title VII claim against McGaw for its alleged conduct during Rushing's term of employment is time-barred.

14

Nor can Rushing bring a Title VII claim against McGaw for its actions in connection with the waiver.  While the Supreme Court has held that Title VII's definition of "employees" includes former employees, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997), § 2000e-2(a) still requires a showing that McGaw discriminated against Rushing because of his race.  Even when liberally construed, Rushing's complaint offers no more than conclusory allegations that his race had any connection to McGaw's alleged actions in his domestic relations case or its "demand" that Rushing sign the McGaw waiver before McGaw released his employment and training records to the Credentialing Corporation of America.

Rushing's retaliation claim against McGaw fails as well.  Title VII protects an employee from an employer's "retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).  Title VII's antiretaliation provision requires that a plaintiff have "'a "good faith belief" that the company practice about which he was complaining violated Title VII.'" *Id.* at 580 (quoting *Keys v. U.S. Welding, Fabricating & Mfg., Inc.,* No. CV91–0113, 1992 WL 218302, at *5 (N.D. Ohio Aug. 26, 1992)).  Rushing has not alleged any facts to show he reasonably believed that McGaw's alleged contact with the domestic relations court or its request that Rushing sign the McGaw waiver before releasing his employment and training records – events that took place over four years after Rushing's employment with McGaw ended – constituted a violation of Title VII's prohibition on discriminatory employment practices.

I conclude Rushing cannot state a plausible Title VII claim against McGaw for discrimination or retaliation and dismiss those claims.

**B.      42 U.S.C. § 1983**

Rushing next pursues a claim against both Defendants for violating his constitutional rights.  "Section 1983 imposes liability for violations of rights protected by the Constitution." *Baker v.*

15

*McCollan*, 443 U.S. 137, 146 (1979). "Under 42 U.S.C. § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citing *Blessing v. Freestone,* 520 U.S. 329, 340 (1997), and *Maine v. Thiboutot,* 448 U.S. 1, 4 (1980)). The actions of a private party "may be deemed to be state action when the 'conduct allegedly causing the deprivation of a federal right may be fairly attributable to the State.'" *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007) (quoting *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937 (1982)).

Both Defendants assert Rushing's § 1983 claim must be dismissed because they are not state actors, and their conduct cannot be fairly attributed to their respective state governments. Rushing concedes this point, at least as to McGaw. (Doc. No. 27 at 7) ("The Plaintiff concedes that McGaw is not a state actor."). But, Rushing argues, the state-actor requirement "is incredibly flawed and inconsistent with statutory and case law." (*Id.*). Rushing did not cite to any legal authority in support of his argument, which is thoroughly disproven by the text of § 1983 and many years of Supreme Court case law.

Neither Wood Health nor McGaw is a state actor and, therefore, they cannot be held liable under § 1983. I dismiss this claim against both Defendants.

**C.      18 U.S.C. § 1341**

Finally, Rushing asserts Wood Health engaged in mail fraud in violation of 18 U.S.C. § 1341. (Doc. No. 1 at 6). Section 1341 is a part of the federal criminal code and does "not give rise to private causes of action." *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997). Rushing concedes this point, as well. (Doc. No. 27 at 9). Therefore, I dismiss this claim.

16

### D. MOTION TO STRIKE

Rushing moves to strike McGaw's reply brief, arguing McGaw is not permitted to file that brief because my August 12, 2024 order granting Rushing's motion for an extension of time to respond to Wood Health's motion to dismiss did not set a deadline for McGaw to file a reply brief in support of its (at the time, unfiled) motion to dismiss. (Doc. No. 29). As McGaw points out, Rule 7.1(e) of the Local Civil Rules permits a moving party to file a reply brief "[u]nless otherwise ordered by the Judicial Officer." Loc. R. 7.1(e). I did not order otherwise and, therefore, McGaw was permitted to file its reply brief within the deadline set by Local Rule 7.1. I deny Rushing's motion to strike.

### V. CONCLUSION

For the reasons stated above, I deny Plaintiff Marcus Rushing's motion to strike, (Doc. No. 29), and grant the motions of Defendants Wood Health Company, LLC, and McGaw Medical Center of Northwestern University to dismiss the complaint for failure to state a claim upon which relief may be granted. (Doc. Nos. 9 and 22).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge